**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 05cr00005 |
| | ) | |
| EDWIN GOSNELL | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER OF COURT**

Defendant, Edwin Gosnell, was indicted by a Grand Jury on January 13, 2005, and

charged with 131 counts of illegal distribution of controlled drugs in his capacity as a registered

pharmacist.

On June 13, 2005, Defendant, through counsel, filed several pretrial motions,

including the instant MOTION TO SUPPRESS STATEMENTS BY DEFENDANT AND

PHYSICAL EVIDENCE (*Document 15*).

On July 29, 2005, the Court conducted an evidentiary hearing on the Motion to

Suppress. At the hearing, all parties were represented by counsel who presented and argued the

issues skillfully and effectively. Louis Colosimo, an investigator with the U.S. Drug

Enforcement Agency, testified on behalf of the government. No other witnesses testified.

The central issues at the hearing were whether Defendant voluntarily consented to

the search of his vehicle and residence and whether Defendant voluntarily gave statements, both

oral and written, during his interview.

At the conclusion of the hearing, counsel for Defendant requested additional time

within which to file a supplemental brief in support of the motion to suppress. The request was

granted by the Court and the final deadline for filing a supplemental brief was August 12, 2005.

However, on or about August 16, 2005, counsel for Defendant advised the Court that she would not be filing a supplemental brief.

A transcript of the testimony adduced at the suppression hearing has not been transcribed to date; however, the Court is prepared to issue its Findings of Fact and Conclusions of Law based upon its notes, recollection, and hearing exhibits.

The Court will discuss primarily those basic facts which are relevant to the motion and except as otherwise indicated the following facts are basically unrebutted.   Based on the testimony and evidence presented at the suppression hearing and the applicable law, the Court enters the following Findings of Fact and Conclusions of Law:

### **FINDINGS OF FACT**

1.     On March 19, 2003, Louis Colosimo ("Colosimo"), an investigator with the U.S.  Drug Enforcement Agency ("DEA") was contacted by Debbie Healy ("Healy"), loss prevention officer for Eckerd Drug Store ("Eckerd").  Healy informed Colosimo that an internal investigation indicated that Defendant, Edwin Gosnell, was filling prescriptions for Oxycodone that were fraudulent.

2.     On March 21, 2003, Colosimo met Edward Cartwright ("Cartwright"), an officer with the Pennsylvania Office of Attorney General, Bureau of Narcotic Investigation, in the parking lot of the Eckerd store where Defendant was employed as a pharmacist.  The purpose of the meeting was to interview Defendant when his shift ended.  Defendant did not know the officers were coming.  Colosimo may have arrived at the parking lot at approximately 11:30 a.m. or noon; he thinks Cartwright arrived around 9:30 a.m.

3.      Defendant's shift ended at approximately 2:00 P.M.  Colosimo and Cartwright were in a parked unmarked vehicle waiting for him to come out of the store.  At approximately 2:15 p.m., Defendant approached his car; the officers then got out of their unmarked car, approached Defendant, identified themselves, and told him that they wanted to speak with him.  Agent Cartwright asked Defendant if he had a weapon.  Defendant replied in the affirmative as he had a 9mm handgun in his front pants pocket.  Agent Cartwright then secured the weapon.

4.      Cartwright then proceeded to read to Defendant his *Miranda* rights. Defendant verbally waived his rights and agreed to cooperate in the investigation.  The *Miranda* warning was given orally in English and Defendant appeared to fully understand it.  Colosimo testified that Defendant appeared to be oriented as to time and place and exhibited no signs of confusion or impairment.

5.      Colosimo then asked Defendant for his consent to search his vehicle, to which Defendant agreed.  Defendant signed a Consent to Search form which authorized Cartwright to search his person, his car (a 1999 Chevrolet Monte Carlo) and his residence located at 5978 Dublin Road, Bethel Park, PA.  *See* Consent to Search, Exhibit 1.  Colosimo testified that Defendant understood that the Consent to Search authorized Cartwright to conduct a complete search of his person, vehicle, and residence.  Prior to the execution of the Consent, the only question asked of Defendant was whether he had a weapon.

6.      Defendant was not handcuffed at the time he signed the Consent to Search and the search had not occurred prior to his signing the Consent to Search.  Colosimo did not have a gun on his person; Cartwright had a gun, but he never took it out. Colosimo could not

recall whether Cartwright's weapon was visible or whether Cartwright was wearing a suit jacket.   The Consent to Search was signed by Cartwright and Colosimo as witnesses.  No other officers were in the area.  Healy was in the vicinity, but she did not participate in the search.

7.      The search of the car revealed the following:  2 written prescriptions for a patient named John Linden; a check made out to cash in the amount of $1000.00, signed by Daniel Dawes, with a notation on it which stated for "work on house;" and a few other prescriptions.  An overcoat and smock were also in the car.  In the overcoat, two prescription bottles were found; in the smock, a few tablets of controlled substances were found.

8.      Healy was present during the search of the vehicle although she did not participate in the search.  She stood with Defendant while the search was conducted.

9.      Immediately after the completion of the vehicle search, Colosimo asked if Defendant would answer some questions regarding the investigation.  Defendant agreed, and the Defendant, accompanied by the officers, walked back into Eckerd and into the employee break room where the interview took place.

10.     Colosimo testified that the break room was located behind the pharmacy counter and could not be observed from the store.  A table and chairs, a microwave, and snacks were located in the break room.  The break room had two doors, on opposite walls, from which a person could enter and/or exit.

11.     During the interview, Defendant sat in the middle chair at the table; the officers were seated on either side of him.  Both Cartwright and Colosimo interviewed Defendant.

12.      While in the break room, at approximately 3:00 p.m., Defendant signed an Office of Attorney General ("OAG") Advice of Rights and a Waiver of Rights form, in which he acknowledged in writing that he waived his *Miranda* rights.  *See* Office of Attorney General Advice of Rights and Waiver of Rights, Exhibit 2.  Defendant was neither handcuffed nor under arrest at the time he signed the OAG Form.  In fact, Colosimo testified that Cartwright specifically told Defendant that he was not under arrest and was free to leave at any time.

13.      Defendant asked the officers the purpose of the interview.  They responded that he was suspected of selling illegal prescriptions.  Defendant did not ask anything else.  The officers informed Defendant that he could be charged with a criminal offense if the investigation revealed that Defendant was in fact selling illegal prescriptions.

14.      Colosimo testified that during the interview, Defendant left the break room unattended to go to the bathroom and was also given a soft drink at his request.  Defendant never indicated to either officer that he wanted to stop the interview, that he wanted to talk to an attorney, or that he wanted to leave the premises.  The interview lasted approximately two and a half (2-1/2) hours.

15.      At approximately 5:40 p.m., Defendant gave the officers a one page written statement while in the break room.

16.      Colosimo testified that Defendant was very cooperative throughout the interview and did not need to be prompted or encouraged to cooperate.

17.      At the conclusion of the interview, the oficers and Defendant drove to Defendant's residence.  Cartwright conducted a search in which he seized approximately $6000

cash, prescription bottles, and some loose pills.  Defendant remained at his residence after the search.

18.     Defendant was arrested in early 2005 based on the Arrest Warrant of this Indictment.


## CONCLUSIONS OF LAW

1.     Initially, the Court observes that the "proponent of a motion to suppress bears the burden of establishing that his [constitutional] rights were violated." *United States v. Leveto*, 343 F. Supp.2d 434, 441 (W.D. Pa. 2004) (citing to *United States v. Acosta*, 965 F.2d 1248, 1257 n. 9 (3d Cir. 1992))(*Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1978)).

2.     The burden of proof in a suppression motion is a preponderance of evidence standard.  *Leveto*, 343 F. Supp.2d at 441-42 (*citing United States v. Matlock,* 415 U.S. 164, 178 n. 14 (1974)) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").


## Consent to Search was Voluntary

3.     A search without a warrant can be conducted if, under the totality of the circumstances, the officers have obtained voluntary consent.  *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973).  The test for voluntariness considers "whether, under the circumstances, the consent was an exercise of free will or whether the actor's free will 'has been overborne and his capacity for self-determination critically impaired.' " *United States v. Antoon*, 933 F.2d 200, 203 (3d Cir.), *cert. denied,* 502 U.S. 907 (1991) (*quoting Schneckloth,* 412 U.S. at 225).

4.      Courts determine whether consent was voluntary by examining the totality of the circumstances surrounding the consent, including the age, education, and intelligence of the person. *United States v. Kim*, 27 F.3d 947, 955 (3d Cir.1994).

5.      Applying these principles to the facts of this case, the Court concludes that Defendant's consent to the search of his car and residence was voluntary.

6.      The Court finds and rules that Defendant did not express any reservation about signing the consent form.  Defendant understood that the Consent to Search authorized Cartwright to conduct a complete search of his person, vehicle and residence.

7.      Significantly, the record does not show that Defendant's will was overcome by any coercive tactics of the officers.  Rather, the record reflects that Defendant knowingly and intelligently executed a comprehensive Consent to Search.

8.      The Court finds and rules that the record is devoid of any evidence which suggests that Defendant did not voluntarily consent to the search of his car and/or residence.


**<u>Statements Were Voluntary</u>**

9.      It is well-established that law enforcement officers must administer *Miranda* warnings whenever a suspect is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." *Miranda v. Arizona*, 384 U.S. 436, 478-479 (1966).

10.     The *Miranda* custody test is an objective test; two discrete inquiries are essential: (1) the circumstances surrounding the interrogation, and (2) given those circumstances, whether a reasonable person would have felt free to terminate the interrogation

and leave. *Yarborough v. Alvarado,* 541 U.S. 652, 663 (2004) (*citing Thompson v. Keohane*,

516 U.S. 99, 133 (1995)).

> 11.     As explained by the Court of Appeals for the Third Circuit:

> This inquiry requires us to consider the totality of the circumstances surrounding the interrogation, which includes examining the events that occurred and the background, experience, and conduct of the defendant. *Miranda* rights will be deemed waived only where the totality of the circumstances "reveal[s] both an uncoerced choice and the requisite level of comprehension.

*United States v. Sriyuth,* 98 F.3d 739, 749 (3d Cir. 1996) (*quoting Moran v. Burbine,* 475 U.S.

412, 421) (citations omitted); *see also, Reinert v. Larkins*, 379 F.3d 76 (3d Cir. 2004).

> 12.     The totality of the circumstances include: 1) evidence of police coercion; 2)

the length and location of the interrogation; 3) the defendant's maturity, physical condition,

mental health and level of education; 4) whether Miranda warnings were given; and 5) whether

an attorney was present for the interview. *United States v. Swint,* 15 F.3d 286, 289 (3d Cir.

1994); *see also United States ex rel. Hayward v. Johnson*, 508 F.2d 322, 326 (3d Cir.1975).

> 13.     It is the government's burden of proving by a preponderance of the evidence

that defendant's statements were made voluntarily.  *Swint*, 15 F.3d at 289 (3d Cir. 1994);

*Arizona v. Fulminante,* 499 U.S. 279, 285-89 (1991).

> 14.     The evidence adduced at the suppression hearing reflects that Defendant

walked on his own accord to the Eckerd break room without the use of physical force or

restraint from the officers.

> 15.     The evidence also reflects that Defendant spoke in a conversational manner to

officers Colosimo and Cartwright and that Defendant did not object to being questioned by the

officers in the Eckert break room and he did not resist answering the officers' questions.

16.     The undisputed evidence reveals that officers Colosimo and Cartwright spoke to Defendant in a conversational manner and that the interview was friendly. Further, Defendant does not contend that the officers used any psychological ploys or deceptive stratagems during the interview.

17.     The undisputed evidence reveals that Defendant was permitted to leave the break room alone, and that he never requested that the interview be stopped or that he be allowed to consult with an attorney.

18.     Defendant was not placed under arrest during questioning or at the conclusion of the interview.  Instead, Defendant returned to his residence, followed by the officers.

19.     This Court has carefully reviewed the entire record and finds from the totality of the circumstances that Defendant was not in custody when interviewed by officers Colosimo and Cartwright on March 21, 2003.  Defendant was not handcuffed or restrained in any manner before, during, or after the interview. Defendant walked on his own accord to the Eckert break room without the use of physical force or restraint from the officers.  The officers informed Defendant at the onset of the interview that he was not in custody, that he was not under arrest, and that he was free to terminate the interview at any time. Defendant was allowed to leave the break room unattended.  A reasonable person under the circumstances of the interview would have felt free to terminate the interview and leave. The Court expressly finds that Defendant was not in custody during the interview conducted by officers Colosimo and Cartwright on March 21, 2003.

20.     Although Defendant was not in custody, the record reflects that the officers gave Defendant his *Miranda* warnings, which he clearly understood.

21.     The Court finds that the statements made by Defendant were voluntary. Defendant was an adult at the time of the interview.  In addition, Defendant was not under the influence of drugs or alcohol at the time of questioning, nor did he complain of any physical or mental disability which would have affected the voluntariness of his statement. A careful review of the entire record and the totality of the circumstances clearly supports a finding that the statement(s) provided by Defendant to officers Colosimo and Cartwright were voluntary in nature.

22.     It is significant to note that the record does not show that Defendant's will was overcome by any coercive tactics of the officers. The interview lasted approximately two and a half hours, and there is no evidence presented which establishes that the actions of the officers  caused Defendant's will to be so overborne that his decision to speak with law enforcement was the result of coerced choice.  Rather, the record reflects that Defendant knowingly and intelligently executed a comprehensive Waiver of Rights.  Defendant asked an intelligent question about the purpose of the interview and was given a truthful answer.

23.     The Court finds that the Defendant voluntarily gave his statements, both verbal and written, to officers Colosimo and Cartwright.


**CONCLUSION**

_____For the reasons hereinabove stated, the Motion to Suppress (*Document No. 15*) filed by Defendant will be denied.  An appropriate Order follows.


McVerry, J.

10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02:  05cr00005 |
| | ) | |
| EDWIN GOSNELL | ) | |

**ORDER OF COURT**

     **AND NOW**, this 14th day of September, 2005, upon consideration of the Motion to

Suppress filed by Defendant (*Document No. 15*), and after an evidentiary hearing, the Court

enters the foregoing Findings of Fact and Conclusions of Law.

     NOW THEREFORE, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that

Defendant's Motion to Suppress is **DENIED.**


               BY THE COURT:


               s/Terrence F. McVerry,
               United States District Judge


cc:      James H. Love,
           Assistant U.S. Attorney
           Email: james.love@usdoj.gov

           Benita Sumey Shrager, Esquire
           1061 Waterdam Plaza Drive
           Suite 201
           McMurray, PA 15317